[No. 39420-1-II.    Division Two.    November 8, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. AQUARIUS TYREE
WALKER, *Appellant*.

*Casey Grannis* (of *Nielsen, Broman & Koch PLLC*), for appellant.

*Mark E. Lindquist, Prosecuting Attorney*, and *Brian N. Wasankari, Deputy*, for respondent.

¶1 JOHANSON, J. — Aquarius Tyree Walker appeals his convictions of first degree murder, two counts of first degree assault, and second degree unlawful possession of a firearm. He argues, inter alia, that the prosecutor committed prosecutorial misconduct during closing arguments by (1) using a fill-in-the-blank argument, (2) comparing the reasonable doubt standard to everyday decision making, (3) telling the jury its job was to declare the truth and return a just verdict, (4) commenting on the length of Walker's presentation of evidence, and (5) misstating the defense of others standard. We hold that the prosecutor's cumulative improper comments constituted prosecutorial misconduct and reverse Walker's convictions for first degree murder

and first degree assault and remand for a new trial.[1] Because we reverse on the prosecutorial misconduct issue, we do not reach Walker's remaining arguments.

## FACTS

BACKGROUND

¶2 On the night of July 28, 2006, Aquarius Walker, Tavarrus Moss, Henri Moss, and Jenelle Dart went to the Brickyard Bar and Grill. As the group left the bar, an argument broke out between a group of Samoans—which included Rooney Key—and Henri and Tavarrus.[2]

¶3 At trial, a number of witnesses testified about the events that occurred outside of the bar. Trial testimonies conflicted about whether a fight occurred, how many people were involved in the fight, who was standing where during the fight, who and how many people fired guns, how many gunshots were fired, and how much risk of harm Tavarrus faced during the incident.

¶4 Generally, most witnesses agreed to several parts of the incident. At one point, Key picked up Tavarrus by his shirt collar and pants and slammed him into a nearby vehicle. At another point, Walker retrieved a gun from a nearby vehicle and fired warning shots into the air. Eventually, Walker fired several more shots, this time aiming at Key, who was still holding on to Tavarrus; but, one shot allegedly struck Tavarrus. Walker fled the scene and hid in a nearby vehicle.

¶5 After the shooting, Tavarrus lay on the ground with a bullet wound in his forehead. He died later that day from the wound. Henri had been shot in the left thigh, and Key had been shot in his right arm.

---

[1] We do not reverse Walker's conviction for second degree unlawful possession of a firearm because he admitted on the stand that he was guilty of that count.

[2] Many participants are referred to by their nicknames in the record. Tavarrus is referred to as "Scoot," Henri as "Mario," and Key as "Junior." For clarity, we refer to the Mosses by their first names and intend no disrespect. We also refer to the participants by their real names, not nicknames, for clarity.

¶6 The Lakewood Police Department quickly responded to the scene. With the help of a canine unit, police found Walker hiding in a nearby vehicle. Officers read Walker his *Miranda*[3] rights and asked why he was hiding. Walker stated that he had heard gunshots and had taken off running. He denied ever having a gun. At the scene, Dart identified Walker as the shooter. Behind a tire store near where Walker had hidden, officers found a black Glock 27 .40 caliber pistol with a laser sight attached.

PROCEDURE

¶7 The State charged Walker with first degree murder by extreme indifference (Tavarrus), under RCW 9A.32-.030(1)(b); second degree felony murder (Tavarrus), under RCW 9A.32.050(1)(b); and two counts of first degree assault (Henri and Key), under RCW 9A.36.011(1)(a). The State also alleged firearm sentencing enhancements for each of these four counts. Finally, the State charged Walker with second degree unlawful possession of a firearm, under RCW 9.41.040(2)(a)(i).

¶8 At trial, Dr. John Howard, a forensic pathologist and medical examiner, testified that Tavarrus died from a gunshot wound to his head. Tavarrus had other wounds, including abrasions on his hands and forehead, and bruising on his nose and left eyelid. Tavarrus also had a black eye, but Dr. Howard concluded that it was a result of the gunshot wound. Dr. Howard considered the nongunshot wounds minor and believed they did not indicate that Tavarrus had been severely beaten prior to being shot. But Dr. Howard acknowledged that if someone had punched Tavarrus in the same area as the bleeding gunshot wound, he would not have been able to distinguish the two injuries.

¶9 Witnesses also differed in their trial testimonies about the risk of harm Tavarrus faced during the incident. Over the course of a trial that spanned well over a month,

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

the State and the defense called numerous witnesses and experts to testify. Much of the testimony at trial conflicted.

¶10 During closing argument, the prosecutor (1) told the jury its job was to declare the truth; (2) in explaining reasonable doubt, made the "fill-in-the-blank" argument and compared the standard to everyday decision making; (3) commented on the length of the defense's case; and (4) told the jury that in evaluating Walker's defense of others claim, the standard comes down to whether they would have committed the same actions, too. Each argument included a PowerPoint slide that emphasized the State's points.

¶11 The jury found Walker guilty on all counts and returned special firearm verdicts. Walker appeals.

## ANALYSIS

### Prosecutorial Misconduct

¶12 Walker argues that five categories of statements the prosecutor made during closing argument constituted prosecutorial misconduct. These statements were that (1) the jury had to fill in the blank to find reasonable doubt, (2) the reasonable doubt standard was similar to everyday decision making, (3) the jury's role was to declare the truth, (4) Walker's presentation of evidence dragged on for a long time, and (5) the defense of others standard was whether the jury would have done it too.[4] We hold that four of the statements were misconduct and that their cumulative effect denied Walker a fair trial.[5]

---

[4] The prosecutor also compared the reasonable doubt standard to a puzzle, but Walker does not assign error to that comparison.

[5] Because we reverse on this ground, we do not reach Walker's remaining arguments. We note, for the trial court's benefit on retrial, that under Washington law a defendant must produce some evidence demonstrating self-defense from "whatever source" and that the evidence does not need to be the defendant's own testimony. *State v. Jordan*, 158 Wn. App. 297, 301 n.6, 241 P.3d 464 (2010) (citing *State v. McCullum*, 98 Wn.2d 484, 488, 656 P.2d 1064 (1983)), *petition for review*

## A. Standard of Review

¶13 An appellant claiming prosecutorial miscon-duct must show both improper conduct and resulting preju-dice. *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006). Prejudice exists only where there is a substantial likelihood the misconduct affected the jury's verdict. *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997), *cert. denied*, 523 U.S. 1007 (1998). We review a prosecutor's comments during closing argument in the context of the total argument, the issues in the case, the evidence ad-dressed in the argument, and the jury instructions. *Brown*, 132 Wn.2d at 561. Defense counsel's failure to object to alleged prosecutorial misconduct at trial fails to preserve the issue for appeal, unless the misconduct is so flagrant and ill intentioned that it evinces an enduring and result-ing prejudice incurable by a curative instruction. *State v. Gregory*, 158 Wn.2d 759, 841, 147 P.3d 1201 (2006).

## B. Improper Conduct

### 1. Fill-in-the-Blank Argument

¶14 Walker argues that the State committed prosecu-torial misconduct by using the so-called fill-in-the-blank argument. We agree.

¶15 When explaining the reasonable doubt standard during closing argument, the prosecutor said, that "beyond a reasonable doubt" did not mean

---

*filed*, No. 85410-6 (Wash. Dec. 15, 2010); *see State v. Walden*, 131 Wn.2d 469, 473-74, 932 P.2d 1237 (1997). The facts in support of such an instruction, such as the defendant's state of mind, can come from a number of sources, including State and defense witnesses and police testimony. The trial court may still deny a defendant's request for a self-defense or defense of others instruction if there is insufficient evidence to support giving such an instruction, and sometimes the defendant's testimony is the only source for such evidence. But the trial court should make abundantly clear that any denial is based on the lack of evidence in support of the requested instruction, rather than on the defendant's failure to waive his right against self-incrimination and his failure to testify.

[b]eyond any doubt, beyond all doubt, to a hundred percent certainty, or beyond a shadow of a doubt. . . . The instruction is important for what it says. It says "a doubt for which a reason exists." If you are to find the defendant not guilty in this case, you have to say, "I had a reasonable doubt."

25 Verbatim Report of Proceedings (VRP) at 54. "When someone says, 'What was your reasonable doubt?' You tell them." 25 VRP at 54. The prosecutor also included a PowerPoint slide that stated:

A doubt for which a reason exists.

If you were to find the defendant not guilty, you *have* to say:

"I had a reasonable doubt"

What was the reason for your doubt?

"My reason was _____."

Clerk's Papers (CP) at 352 (emphasis added). Walker did not object.

¶16 Walker correctly states that the fill-in-the-blank argument employed here improperly suggested that Walker had to provide a reason for the jury to find him not guilty. *State v. Johnson*, 158 Wn. App. 677, 684-85, 243 P.3d 936 (2010), *review denied*, 171 Wn.2d 1013 (2011); *State v. Venegas*, 155 Wn. App. 507, 523, 228 P.3d 813, *review denied*, 170 Wn.2d 1003 (2010); *State v. Anderson*, 153 Wn. App. 417, 431, 220 P.3d 1273 (2009), *review denied*, 170 Wn.2d 1002 (2010).[6]

¶17 The State attempts to distinguish *Anderson* and *Venegas*, claiming that the statements made here are not similar because the prosecutor did not tell the jury that it must find a reason to find Walker not guilty. This is incorrect. Even if the prosecutor's comments did not qualify as a fill-in-the-blank argument, his PowerPoint slide told the jury it had to articulate a reason before it could find Walker not guilty: "If you were to find the defendant not

---

[6] Walker's trial occurred, and thus these statements were made, before our decisions in *Johnson*, *Venegas*, and *Anderson*.

guilty, *you have to say*: 'I had a reasonable doubt . . . My reason was _____.' " CP at 352 (emphasis added). The prosecutor, as in *Anderson* and *Venegas*, told the jury that before it could find Walker not guilty, it needed a reason. This shifted the burden of proof to Walker. The prosecutor's comments were improper.

## 2. Everyday Decisions Argument

¶18 Again relying on *Anderson*, Walker argues that the prosecutor also committed prosecutorial misconduct by comparing the burden of proof to everyday decisions. Here, the prosecutor also argued that the reasonable doubt standard "is a common standard that you apply every day" and compared it to having surgery and leaving children with a babysitter. 25 VRP at 55-56. Walker did not object to this argument at trial. We agree with Walker that the prosecutor's arguments were improper.

¶19 In *Anderson*, we held that similar comments were improper "because they minimized the importance of the reasonable doubt standard and of the jury's role in determining whether the State has met its burden." *Anderson*, 153 Wn. App. at 431. We continued, "By comparing the certainty required to convict with the certainty people often require when they make everyday decisions—both important decisions and relatively minor ones—the prosecutor trivialized and ultimately failed to convey the gravity of the State's burden and the jury's role in assessing its case against Anderson." *Anderson*, 153 Wn. App. at 431. As in *Anderson*, the comments made here were improper.

## 3. Declare-the-Truth Argument

¶20 Still relying on *Anderson*, Walker correctly asserts that the prosecutor's comments to the jury that its job was to declare the truth were improper. We agree.

¶21 The prosecutor in this case stated:

The goal of closing argument is to point you toward a just verdict. You'll note that's not just a verdict, but it is a just

verdict. The word "verdict" comes from a Latin word, "veredic-tum." Veredictum means to declare the truth. And so by your verdict in this case, you folks, the 12 of you who will deliberate, will decide the truth of what happened to Mario Moss, to [Tavarrus] Moss, and Rooney Key on July 30th [sic] of 2006.

25 VRP at 7-8. Toward the end of his closing argument, the State declared, "So it's time for the truth. . . . So I talked to you at the very beginning about this—about declaring the truth as part of your role in returning a verdict. The truth is, the defendant is guilty of [the five charged crimes]." 25 VRP at 58. PowerPoint slides highlighted this argument. Walker did not object.

¶22 In *Anderson*, we held that a nearly verbatim argument was improper because "[a] jury's job is not to 'solve' a case. . . . Rather, the jury's duty is to determine whether the State has proved its allegations against a defendant beyond a reasonable doubt." *Anderson*, 153 Wn. App. at 429. As in *Anderson*, the prosecutor's comments here were improper.

¶23 We note that a recent decision from our court suggests that declare-the-truth statements during closing argument are not improper conduct. *State v. Curtiss*, 161 Wn. App. 673, 701-02, 250 P.3d 496, *review denied*, 172 Wn.2d 1012 (2011). First, the closing argument statements in *Curtiss* are distinguishable. In *Curtiss*, the prosecutor asked the jury to " 'return a verdict that you know speaks the truth.' " *Curtiss*, 161 Wn. App. at 701. Here, the State asked the jury to "declare the truth" and "decide the truth of what happened." 25 VRP at 8. Second, although the *Curtiss* court discussed *Anderson* with regard to a variety of other issues on appeal, the court did not apply *Anderson* in its analysis of this particular issue. *Curtiss*, 161 Wn. App. at 701-02. Instead, the *Curtiss* court concluded that the arguments were "overly simplistic but not misconduct." *Curtiss*, 161 Wn. App. at 702. We rely on *Anderson* in our determination the statements in the present case are improper conduct.

### 4. Comment on Walker's Right To Present a Defense

¶24 In addition, Walker argues that the prosecutor committed misconduct by commenting on his right to present a defense. He insists that the State limited his right to present a complete defense by commenting on the length of the defense's case. We disagree.

¶25 While explaining the types of defenses defendants normally use, the prosecutor said, "And in this particular case, I think there's one more defense, or at least one potential defense, and that's this: This case drags out long enough, maybe you folks will forget everything you heard in the State's case and you won't be able to reach a verdict." 25 VRP at 9. A PowerPoint slide reiterated the argument. Walker did not object.

¶26 A defendant has a right to present his theory of the case to the jury. *State v. Williams*, 132 Wn.2d 248, 259, 937 P.2d 1052 (1997). This right can include the right to jury instructions on an affirmative defense after offering sufficient admissible evidence to justify giving the instruction. *Williams*, 132 Wn.2d at 259-60. It can also include the right to offer the testimony of his or her witnesses in order to establish a defense. *See State v. Cheatam*, 150 Wn.2d 626, 648, 81 P.3d 830 (2003).

¶27 The prosecutor's comments did not deny Walker the right to present evidence or present his theory of the case to the jury. The prosecutor's comment is fairly characterized not as commenting on Walker's right to present a defense but, rather, on the length and repetition of his evidence. At worst, the prosecutor's comments are hypocritical. Both sides used 11 different trial days to present their cases-in-chief.

### 5. Misstating Law of Defense of Others

¶28 Walker also argues that the prosecutor committed misconduct by misstating the law of defense of others by telling the jury that the defense of others stan-

dard would be met if the jury would have taken the same action in defense of another. We agree.

¶29 In discussing the defense of others instructions, the prosecutor began to explain the standard by which the jury should measure the reasonableness of Walker's actions. He explained that the standard comes down to "I would do it too if I knew what he knew. That's the objective standard in defense of others." 25 VRP at 44. Later, the prosecutor repeated the message: "While you're listening to the defense argument, while you're deliberating this, ask yourselves and ask each other repeatedly, 'Would I do it too if I knew what he knew?' " 25 VRP at 45. And again,

> Why does [Walker] get to just fire shots and then claim it was a reasonable exercise of force and a reasonable method of doing it? When none of the folks there at the same time with the same knowledge as he has did anything remotely close. You would do it too if you knew what he knew.

25 VRP at 47. And again, "I would suggest to you, in addition, there isn't a single one of you who would do what he did." 25 VRP at 51.

¶30 In rebuttal, the prosecutor repeated this theme: "So it's not just the amount of force that he uses that's unreasonable. You wouldn't do it if you knew what he knew." 26 VRP at 18. And again,

> Your job is to determine the defendant's culpability. What you do in doing that is you say that as a jury of his peers, 12 fellow citizens of Pierce County and the State of Washington, his conduct is lawful, because we would have done the exact same thing if we had that same decision to make.

26 VRP at 21. During the rebuttal argument, defense counsel objected, saying the argument was a misstatement of the law, and the trial court overruled the objection. The prosecutor then repeated that the jury "determine[s] the reasonably prudent person's standard. And that's, would you do it too if you knew what he knew?" 26 VRP at 22. Five accompanying PowerPoint slides instructed the jury that

"reasonable person" and "reasonable force" means, and the entire case turned on, whether "I would do it too, if I knew what he knew." CP at 346-47 (capitalization omitted).

¶31 A prosecutor's argument to the jury must be confined to the law stated in the trial court's instructions. *State v. Estill*, 80 Wn.2d 196, 199, 492 P.2d 1037 (1972). When the prosecutor mischaracterizes the law and there is a substantial likelihood that the misstatement affected the jury verdict, the defendant is denied a fair trial. *State v. Gotcher*, 52 Wn. App. 350, 355, 759 P.2d 1216 (1988). A prosecutor's misstatement of the law is a serious irregularity having the grave potential to mislead the jury. *State v. Davenport*, 100 Wn.2d 757, 764, 675 P.2d 1213 (1984).

¶32 Here, the prosecutor did not confine his comments to the jury instructions and he misstated the law of defense of others. The reasonableness standard is not whether the jury would have done it, too. Rather, as the trial court instructed the jury, the standard is that a person may "employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of and prior to the incident." CP at 190; *State v. Janes*, 121 Wn.2d 220, 238, 850 P.2d 495 (1993). Nothing in the instruction requires the jury to substitute its subjective belief about how any juror would have responded in the situation. The prosecutor's comments encouraged the jury to judge the events not objectively, but based on their own individual beliefs about how they would have responded. The prosecutor's comments encouraged the jury to make its decision personal. This misstated the defense of others standard and was improper.[7]

---

[7] For this last issue, error related to misstating the standard of the defense of others, Walker did object and, therefore, the prejudice prong is more properly analyzed under the less demanding standard of whether there is a substantial likelihood the misconduct affected the jury's verdict. *Brown*, 132 Wn.2d at 561. But prejudice exists even when we use the more demanding standard of whether

## C. Prejudice

¶33 Walker argues that the cumulative effect of the many instances of misconduct requires reversal. We agree.

¶34 A defendant cannot demonstrate flagrant and ill-intentioned conduct where a curative instruction could have cured any error. *State v. Corbett*, 158 Wn. App. 576, 594, 242 P.3d 52 (2010). But the cumulative effect of repetitive prejudicial prosecutorial misconduct may be so flagrant that no instruction or series of instructions can erase their combined prejudicial effect. *State v. Case*, 49 Wn.2d 66, 73, 298 P.2d 500 (1956).

¶35 In *Anderson*, we held that Anderson had not shown that the prosecutor's comments about the jury's duty to declare the truth and return a just verdict affected the verdict, in light of the jury instructions regarding the jury's duty and the thorough discussion of the evidence by both counsel during closing. *Anderson*, 153 Wn. App. at 429. In addition, although the prosecutor (1) used the fill-in-the blank argument, (2) compared the reasonable doubt standard to everyday decision making, and (3) discussed common decisions in which one might choose to act or refrain from acting, we found that Anderson failed to demonstrate that these comments were so flagrant or ill intentioned that an instruction could not have cured the prejudice. *Anderson*, 153 Wn. App. at 431-32. We reasoned that the trial court's instructions regarding the presumption of innocence minimized any negative impact on the jury, and we presume that the jury follows the trial court's instructions. *Anderson*, 153 Wn. App. at 432.

¶36 In *Venegas*, the case "turned largely on witness credibility." *Venegas*, 155 Wn. App. at 526. We held that the cumulative effect of the prosecutor's improper comments on Venegas's presumption of innocence, excessive discovery

---

the conduct creates an enduring and resulting prejudice incurable by a curative instruction. *Gregory*, 158 Wn.2d at 841.

sanctions that prevented the defense from challenging the credibility of the victim's testimony, and improperly admitted evidence warranted reversal of Venegas's convictions under the cumulative error doctrine. *Venegas*, 155 Wn. App. at 526-27.

¶37 In *Johnson*, we implied that the fill-in-the-blank argument was per se flagrant and ill intentioned. *Johnson*, 158 Wn. App. at 685-86. But we recently clarified that although this argument, as well as the declare-the-truth argument, are improper, they are not per se flagrant and ill intentioned. *State v. Emery*, 161 Wn. App. 172, 195-96, 253 P.3d 413, *review granted*, 172 Wn.2d 1014 (2011). The appellant must still show prejudice, i.e., a substantial likelihood that the prosecutor's improper statements affected the jury. *Emery*, 161 Wn. App. at 195-96.

¶38 Like *Venegas* and *Johnson*, this case was largely a credibility contest, in which the prosecutor's improper arguments could easily serve as the deciding factor. Disputed facts include whether Walker was the lone gunman, whether he fired into a crowd of people or just at Key and Tavarrus, whether Walker fired before or after Key and Tavarrus began to fight, the level of harm Tavarrus faced, and whether Walker was the first aggressor. The bullet removed from Tavarrus's head could not be matched conclusively to Walker's gun and, therefore, could have come from one of the other shooters mentioned by eyewitnesses.

¶39 Furthermore, the prosecutor made the improper comments not just once or twice, but frequently. He used them to develop themes throughout closing argument, such as the repeated references to the jury's duty to declare the truth and that the jury would not have done it too. These statements were only further emphasized by the prosecutor's PowerPoint slides. Because of the conflicting evidence and the frequent use and repetition of improper statements, there is a substantial likelihood that the prosecutor's mischaracterization and minimization of the reasonable doubt standard, improper argument that the jury declare

the truth, and misstatement of the defense of others standard affected the jury's verdict, and that further instructions would not have cured the effect of the prosecutor's comments. We reverse Walker's convictions for first degree murder and first degree assault and remand for a new trial.[8]

¶40 We hold that the prosecutor committed flagrant and ill-intentioned misconduct and the cumulative effect of this misconduct requires reversal and remand for a new trial.

PENOYAR, C.J., and VAN DEREN, J., concur.

---

[8] We are not persuaded by the State's argument here that any improper comments during closing argument were cured by his statement that the jury should hold him to an exacting standard and disregard any statement he makes that is not supported by the facts or law. Although the prosecutor made this statement, he spent much of a lengthy argument, which continued over two days, repeatedly making improper comments. If a self-serving comment at the start of a closing argument could save the prosecutor from repeated, intentional, improper comments, there would be no disincentive to committing prosecutorial misconduct.