IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 67617-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| LONNIE RAY CARTER, | ) | |
| | ) | |
| Appellant. | ) | FILED: March 4, 2013 |

SCHINDLER, J. — Lonnie Ray Carter seeks reversal of his jury conviction of felony harassment. Carter asserts prosecutorial misconduct in closing argument denied him a fair trial. We affirm.

## FACTS

The State charged Lonnie Ray Carter with felony harassment. The State alleged that while Carter was an inmate at the King County Regional Justice Center in October 2008, he threatened to kill King County Corrections Officer Michael Harding. The primary witnesses at trial were Officer Harding and Carter.

Officer Harding testified that he had worked at the King County Regional Justice Center as a corrections officer for 13 years. In October 2008, Officer Harding was assigned to the administrative segregation unit. The administrative segregation unit houses inmates who are in protective custody, and inmates with "behavior issues and

an inability to follow the rules." Beginning at 8:00 a.m. each day, each of the 32 inmates in the unit are allowed an hour out of their cells one at a time. Officer Harding said that typically, if an inmate is given his hour out in the morning one day, he will have an hour out in the evening the following day.

On October 27, Officer Harding was working the 6:30 a.m. to 2:30 p.m. shift. When Officer Harding went to let Carter out of his cell at 8:00 a.m., Carter complained that his "hour out" should be in the evening because it had been in the morning the day before. Officer Harding told Carter he was being given his hour out according to the schedule. Carter began cursing and slammed the cell door. Officer Harding testified that at that point, he considered it a "done issue. Because we work there, we deal with this every day. Unfortunately, that everyday stuff, we get yelled at all the time."

Officer Harding testified that when he conducted a security check at about 8:45 a.m., Carter stood at his cell door, yelling and cursing at Officer Harding, and making derogatory and sexual comments.

When Officer Harding conducted a second security check an hour later, Carter yelled curse words, sexual innuendos, and racial slurs at Officer Harding. Officer Harding said that then, "out of the blue," Carter got very calm and told Officer Harding: "[W]hen I get out, I'm going to look up your address on the internet, I'm going to come over to your house, cut your phone line, and I'm going to stab you and your family to death."

Officer Harding testified he was scared because the threats "became not just focused on me but it also became focused on my family. And the fact that I knew eventually he will get out." Officer Harding said that Carter's threat was different

2

because "[i]t had the intent to kill, when, where and how." Officer Harding brought a picture of Carter home and instructed his wife to call 911 if she saw him.

Carter testified that he was upset that his hour out was at 8:00 a.m. because it was the third day in a row, and the people he wanted to call were not awake at 8:00 a.m. Carter said that while Officer Harding was conducting a security check, Carter was explaining the plot of a movie to the inmate in the adjacent cell. Carter said that the movie plot involved inmates who escaped from prison, broke into a house, and stabbed a family.

The court instructed the jury that to convict Carter of felony harassment, the State must prove beyond a reasonable doubt that Carter knowingly threatened to kill Officer Harding and that Carter's words or conduct placed Officer Harding in reasonable fear that the threat to kill would be carried out.[1] The jury instructions define a "threat" as follows:

> Threat means to communicate, directly or indirectly, the intent to cause bodily injury in the future to the person threatened or to any other person;
> To be a threat, a statement or act must occur in a context or under such circumstances where a reasonable person, in the position of the speaker, would foresee that the statement or act would be interpreted as a

---

[1] Jury Instruction No. 7 states:

To convict the defendant of the crime of felony harassment, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about October 27, 2008, the defendant knowingly threatened to kill Michael Harding immediately or in the future;

(2) That the words or conduct of the defendant placed Michael Harding in reasonable fear that the threat to kill would be carried out;

(3) That the defendant acted without lawful authority; and

(4) That the threat was made or received in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

3

serious expression of intention to carry out the threat rather than as something said in jest or idle talk.[2]

The prosecutor argued during closing argument that although corrections officers like Officer Harding routinely hear negative comments, the evidence showed the threat placed Officer Harding in reasonable fear of harm. Defense counsel argued that the State did not prove guilt beyond a reasonable doubt that the threat placed Officer Harding in reasonable fear.

The jury convicted Carter of felony harassment. The court imposed a standard-range sentence of 51 months.

## ANALYSIS

### Closing Argument

Carter claims prosecutorial misconduct in closing argument denied him a fair trial. Carter argues the prosecutor misstated the law and improperly urged the jury to decide the case based on an emotional response.

The defendant bears the burden of establishing that the challenged conduct was both improper and prejudicial. State v. Cheatam, 150 Wn.2d 626, 652, 81 P.3d 830 (2003). Where, as here, a defendant does not object, the defendant is deemed to have waived the error "unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." State v. Emery, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). The defendant must show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.' " Emery, 174 Wn.2d at 761 (quoting State v. Thorgerson, 172 Wn.2d 438, 455,

---

[2] The court also instructed the jury on the lesser-included offense of harassment.

4

258 P.3d 43 (2011)). The reviewing court focuses on whether the resulting prejudice could have been cured, " '[t]he criterion always is, has such a feeling of prejudice been engendered or located in the minds of the jury as to prevent a [defendant] from having a fair trial?' " Emery, 174 Wn.2d at 762[3] (quoting Slattery v. City of Seattle, 169 Wash. 144, 148, 13 P.2d 464 (1932)). The court considers a claim of prosecutorial misconduct in the context of the entire argument, the issues in the case, the evidence, and the jury instructions. Emery, 174 Wn.2d at 764 n.14.

Misstating the law is improper and has the potential to mislead the jury. State v. Davenport, 100 Wn.2d 757, 763, 675 P.2d 1213 (1984). A prosecutor may not make comments designed to appeal to the passion and prejudice of the jury, or encourage a verdict based on emotion rather than evidence. State v. Belgarde, 110 Wn.2d 504, 507-08, 755 P.2d 174 (1988). However, a prosecutor has wide latitude to draw reasonable inferences from the evidence. State v. Stenson, 132 Wn.2d 668, 727, 940 P.2d 1239 (1997).

To convict Carter of the crime of felony harassment, the State had the burden of proving that Officer Harding was in reasonable fear that the threat to kill will be carried out. Former RCW 9A.46.020(1)-(2) (2003);[4] State v. C.G., 150 Wn.2d 604, 610, 80 P.3d 594 (2003). In other words, the State had to prove that it was reasonable for Officer Harding to fear Carter would carry out his threat. State v. Alvarez, 74 Wn. App. 250, 260-61, 872 P.2d 1123 (1994), aff'd, 128 Wn.2d 1, 904 P.2d 754 (1995).

---

[3] (Second alteration in original.)

[4] The harassment statute was amended in 2011. LAWS OF 2011, ch. 64, § 1. The amendment makes the harassment of a criminal justice participant a felony. RCW 9A.46.020(2)(b)(iii). Carter was convicted of felony harassment under a different subsection of the statute, which was unchanged by the 2011 amendment. Former RCW 9A.46.020(2)(b)(ii).

Carter asserts the prosecutor's argument that when considering Officer Harding's testimony, the jury should "put yourself in [Officer Harding's] shoes, those are the same emotions that you would feel if you were in that position," was improper. In context, the prosecutor's argument did not misstate the law and did not improperly appeal to the passion and prejudice of the jury. The testimony at trial showed that corrections officers routinely receive insults. The State pointed to Officer Harding's testimony to argue that Carter's threat was different than those everyday insults, that the threat scared Officer Harding, and his fear was objectively reasonable. The prosecutor pointed to Officer Harding's testimony that "he was positive those threats were going to be carried out. And he was scared, and he was fearful. But he also told you that it made him angry." The prosecutor then argued:

> And [Officer Harding] told you that he was positive those threats were going to be carried out. And he was scared, and he was fearful. But he also told you that it made him angry. And I think when you reflect on his testimony and you put yourself in his shoes, those are all the same emotions that you would feel if you were in that position. You would feel scared, you would be fearful, and you would be angry that someone would say this to you.

The case Carter relies on, State v. Walker, 164 Wn. App. 724, 265 P.3d 191 (2011), is distinguishable. In Walker, the defendant asserted self defense. The prosecutor improperly misstated the law during closing argument by stating that the jury "determine[s] the reasonably prudent person's standard. And that's, would you do it too if you knew what he knew?" Walker, 164 Wn. App. at 735.[5] The prosecutor also used power point slides stating that the reasonable person and reasonable force standards required the jury to decide if "I would do it too if I knew what he knew." Walker, 164 Wn.

---

[5] (Emphasis added) (alteration in original) (internal quotation marks omitted).

App. at 735-36.[6] Here, unlike in <u>Walker</u>, the prosecutor did not ask the jurors to render a verdict based on how they would have reacted. Instead, the prosecutor argued that Officer Harding's fear was reasonable.

We conclude the prosecutor did not misstate the law or improperly appeal to the jury's emotions during closing argument.

Carter also argues for the first time on appeal that the prosecutor improperly urged jurors to convict Carter in order to stand up against harsh conditions faced by corrections officers. Carter points to the remarks the prosecutor made that corrections officers have a thankless job, and that inmates are not grateful to corrections officers for their service. The prosecutor argued, in pertinent part:

> Your role as jurors is to be fair, to be impartial. What the State is asking is that you not only be fair to the defendant in this case, but be fair to the State. Most of all, be fair and reasonable to the folks, the Department of Corrections officers who come to work every day and deal with what they have to deal with. And when someone from their community tells you, this particular inmate made this threat to me, and I feared for my life and the life of my family, the State is asking that you hold the defendant accountable for those actions, for those threats, and find him guilty of Felony Harassment.

As a general rule, an appeal to the jury to act as a conscience of the community is not impermissible, unless specifically designed to inflame the jury. <u>State v. Finch</u>, 137 Wn.2d 792, 842, 975 P.2d 967 (1999). In <u>State v. Bautista-Caldera</u>, 56 Wn. App. 186, 783 P.2d 116 (1989), the prosecutor stated:

> [D]o not tell that child that this type of touching is okay, that this is just something that she will have to learn to live with. Let her and children

---

[6] (Internal quotation marks omitted.)

know that you're ready to believe them and [e]nforce the law on their behalf.

Bautista-Caldera, 56 Wn. App. at 195.[7] The court concluded the prosecutor impermissibly asked the jury to send a message to society. Bautista-Caldera, 56 Wn. App. at 195. Nonetheless, the court held the misconduct did not prejudice the defendant because immediately before making that argument, the prosecutor told the jury to decide the case based on the evidence. Bautista-Caldera, 56 Wn. App. at 195.

Here, unlike in Bautista-Caldera, the statements the prosecutor made were based on the evidence and cannot fairly be characterized as a request to send a message to society. In context, the prosecutor attempted to point out that although Officer Harding routinely received insults from inmates, Carter's threat to Officer Harding was different and placed him in reasonable fear that Carter would carry out the threat. Further, even if improper, Carter cannot show the comments were so flagrant and ill intentioned that an instruction would not have cured any prejudicial effect. See State v. Barajas, 143 Wn. App. 24, 40-41, 177 P.3d 106 (2007)[8] (prosecutor's comparison of the defendant to a "mangie [sic], mongrel mutt" was improper, but not so flagrant and ill intentioned that an instruction could not have cured the prejudicial effect).[9]

---

[7] (Emphasis omitted) (alteration in original) (internal quotation marks omitted).

[8] (Alteration in original) (internal quotation marks omitted).

[9] And as the State points out in this case, the prosecutor's arguments were no different than defense counsel's. Defense counsel stated: "It's a tough job, ladies and gentlemen. The whole criminal justice system is a mess." Defense counsel also stated: "And we want to stand up for our corrections officers. You know, they are doing a tough job."

Statement of Additional Grounds

In his statement of additional grounds, Carter argues that the presiding criminal judge abused his discretion by refusing to grant Carter's request to discharge his attorney at the April 25, 2011, hearing.[10]

Between February 2009 and September 2010, at Carter's request, the court appointed four different attorneys to represent him. Each time Carter claimed there was a conflict of interest. At the April 25 hearing, Carter asked the court to discharge his fifth attorney, claiming a conflict of interest. Carter told the court that he threatened to kill the attorney: "I told him I was gonna kill him. And he didn't report that to the Court." The attorney told the court that he and Carter had a disagreement over whether he would go collect Carter's personal effects, which the attorney said were related to another lawsuit. The attorney said that he would like to help Carter and believed he could continue to work in Carter's best interest.

The Court found that there was no conflict of interest and that Carter's threat was yet another attempt by Carter to create a conflict of interest. The court denied Carter's motion to reconsider, stating: "It is clear to the court that defendant will never be satisfied with any attorney appointed to represent him. There is no reason for the court to provide the defendant with another attorney at public expense."

"[A] defendant does not have an absolute right under the Sixth Amendment to his choice of a particular advocate." State v. Schaller, 143 Wn. App. 258, 267, 177 P.3d 1139 (2007). "Attorney-client conflicts justify the grant of a substitution motion only when counsel and defendant are so at odds as to prevent presentation of an adequate

---

[10] Carter frames the issue as follows: "Did the pre-trial court's order compelling defense counsel to proceed to jury trial with appellant regardless of appellant's death threats to acting defense counsel at the April 25, 2011 hearing; guarantee appellant a sure conviction?"

defense." Stenson, 132 Wn.2d at 734. Whether to substitute counsel is a matter within the discretion of the trial court. Schaller, 143 Wn. App. 267. Here, the court did not abuse its discretion in denying Carter's request to discharge his attorney. See State v. Thompson, 169 Wn. App. 436, 461-62 n.67, 290 P.3d 996 (2012) (affirming trial court's refusal to substitute counsel where both trial attorney and trial court agreed that any new lawyer appointed to assist defendant would face same difficulties).[11]

Carter also argues that his attorney provided ineffective assistance of counsel by not calling a witness subpoenaed by one of his previous attorneys. Because the record does not indicate who the subpoenaed witness was or what the testimony would have been, this claim is not supported the record and we cannot review it. RAP 10.10(c) (court does not consider statement of additional grounds for review if it does not inform the court of the nature and occurrence of alleged errors); State v. Alvarado, 164 Wn.2d 556, 569, 192 P.3d 345 (2008).

Affirmed.

WE CONCUR:

---

[11] Carter also argues that the judge presiding over Carter's trial failed to conduct an adequate inquiry into a conflict of interest. But Carter did not present any new information regarding a conflict of interest to the trial judge not already raised in front of the presiding criminal judge who had heard Carter's request to discharge his fifth attorney. Carter is not entitled to relief.