# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  57790-9-II |
| Respondent, | |
| v. | |
| CHRISTOPHER R. DAMITZ, | UNPUBLISHED OPINION |
| Appellant. | |

PRICE, J. — Christopher R. Damitz "came to Wahkiakum County for one reason: to steal."

This statement by the State was, according to Damitz, an improper thematic catchphrase that constituted prosecutorial misconduct in his trial for one count of second degree burglary, three counts of second degree identity theft, one count of third degree assault, and one count of making or having burglary tools.  Not only does Damitz argue that the State committed prosecutorial misconduct by using this phrase in its opening statement and closing argument, but he also argues that he received ineffective assistance of counsel when his counsel failed to object to it.

We reject Damitz's arguments and affirm.

### FACTS

I. BACKGROUND

In September 2021, Cynthia Preece received an alert from her security system notifying her that something was on her deck.  Video footage would show two men arriving at her property.

The two men began searching the property for security cameras, tampering with several of the cameras, and stealing property from a shed. Preece called 911.

Law enforcement discovered that Preece's driveway gate had been removed from its hinges and a storage shed was missing numerous items. Law enforcement obtained the security footage, and information was put out to the public about the incident.

Three days later, a Wahkiakum County Sheriff's Office deputy discovered Damitz passed out in the driver's seat of a car that was blocking the road near a wildlife refuge. Also in the car was Damitz's girlfriend, Karie Taylor. Tinfoil squares and a clear glass pipe were observed inside the car. When asked for identification, Damitz responded that he did not have any identification, but he provided the name and birthdate of his brother, Joseph Damitz, and an address in Puyallup. The deputy was unable to determine that Damitz was not his brother, so he merely referred Damitz for drug treatment.

Meanwhile, later that same day, a ferry captain called law enforcement to report he had seen someone leave the ferry who resembled one of the suspects from the Preece burglary. Law enforcement searched the area and discovered Damitz and Taylor in a car. Damitz was asked for identification, and he again provided his brother's name and date of birth. At the time, Damitz had a full beard with sideburns and was wearing a baseball hat. Damitz and Taylor denied any involvement in suspicious activity in the area, so they were allowed to drive away.

After Damitz and Taylor drove away, the deputy accessed Joseph Damitz's driver's license information and immediately suspected that it was not the same person he had let drive away. The deputy then compared a still image from the video footage of the Preece burglary to Christopher

2

Damitz's driver's license records and determined that it was Damitz, not his brother, that he had encountered.

Several days later, law enforcement recovered a stockpile of stolen property that had been left on an embankment in the wildlife refuge. Some of the recovered property was from the Preece burglary.

About five months later, in February 2022, a deputy saw a man with a backpack and woman walking along a road late at night. The pair were about half of a mile from the nearest building. The deputy stopped and requested their identification. Yet again, Damitz gave his brother's name and date of birth. But the deputy was unpersuaded and, suspecting that Damitz was involved in an earlier burglary, the deputy called for backup to assist in arresting Damitz.

When the backup arrived, Damitz jumped the guard rail to the road and began running away down a steep embankment. Both deputies pursued, resulting in a struggle. During the struggle, Damitz dropped a few items (tools from his backpack) and kicked one of the deputies. Damitz was eventually arrested.

Law enforcement searched Damitz's backpack and discovered several items that are commonly referred to as a "burglary kit" when found together, including a pair of wire cutters, a screwdriver, drill bits, gloves, keys, valve stem covers, bolt cutters, a drill index, a cordless driver drill, and a crow bar.

Following its investigation, the State charged Damitz with two counts of second degree burglary, three counts of second degree identity theft, one count of third degree assault, one count of making or having burglary tools, one count of possession of another's identification, and one count of resisting arrest.

II. OPENING STATEMENTS

The case proceeded to a jury trial. The State began its opening statement with,

May it please the Court, Counsel, members of the jury. *Christopher R. Damitz came to Wahkiakum County for one reason: to steal*.

Verbatim Rep. of Proc. (VRP) at 229 (emphasis added). Damitz did not object.

After making this statement, the State proceeded to lay out the evidence that it expected to introduce. It then ended its opening statement by returning to its opening theme, stating:

At the end of this trial, the State will ask you to find the Defendant guilty for the burglary of Cynthia Preece's shed . . . three counts of identity theft in the second degree for each time he gave his brother's name and date of birth to the officers to avoid arrest; assault in the third degree, when he kicked [the deputy]; and making or having burglary tools the night that he was arrested. *Because Mr. Damitz came to Wahkiakum County for one reason, to steal*.

VRP at 237 (emphasis added). Damitz did not object.

III. TRIAL TESTIMONY

Following opening statements, the case proceeded to trial testimony. Preece and the investigating detectives testified consistently with the above facts. One of the deputies further testified that Damitz currently looked different than when he arrested him several months earlier; Damitz had changed his facial hair, his face was thinner, and his skin was clearer.

Also testifying for the State was Damitz's girlfriend, Taylor. The State showed her a Facebook photograph of Damitz, which she confirmed was a fair and accurate depiction of Damitz's appearance during their relationship.

Several items were admitted into evidence, including photographs and video footage (and a still image from the footage) of the Preece burglary, the Facebook photograph of Damitz, a

4

photograph of his Washington driver's license with a Puyallup address, and photographs of the tools found in the backpack. Thereafter, the State rested.[1]

Damitz did not call any witnesses and rested.

IV. JURY INSTRUCTIONS AND CLOSING ARGUMENTS

The trial proceeded to jury instructions. The trial court instructed the jury to disregard any remark, statement, or argument that was not supported by the evidence. The jury was also instructed to decide the case impartially and without prejudice.

Following the instructions to the jury, the State began its closing argument with the same theme from its opening statement. The State argued,

> *Christopher Damitz came to Wahkiakum County for one reason*: *to steal*. I told you that at the beginning of my opening statement. And you've heard the evidence throughout the past three -- two, now into our third day of trial. The State's going to ask you to find the Defendant guilty of all the charges that are going to be before you this morning.

VRP at 492 (emphasis added). Damitz did not object to the State's remarks.

The State then summarized the relevant trial evidence that proved each charge. With respect to the burglary count, the State argued that Damitz was one of the suspects captured in the Preece burglary video footage. The State reminded the jury of Taylor's testimony, when she stated that Damitz was the person depicted in a Facebook photograph, and urged the jury to see the strong resemblance between the person in the video still image and the Facebook photograph. The State noted that, in both, the person was wearing a baseball hat backwards, was smoking a cigarette at the same angle, and had the same facial features.

---

[1] After the State rested, the trial court dismissed one burglary count, unrelated to the Preece burglary, based on insufficient evidence.

The State also argued that Damitz's connection to the recovered stolen property was evidence of his guilt. The State reminded the jury that several days after law enforcement found Damitz passed out in his car, some of Preece's stolen property was recovered from a nearby location—an embankment in the wildlife refuge.

After discussing the burglary count, the State moved on to the identity theft counts. The State argued that the evidence showed Damitz had knowingly provided law enforcement with his brother's name and date of birth on three occasions and, thus, intended to make a false or misleading statement to a public servant.

The State next discussed the third degree assault evidence, recounting the direct testimony from the deputies that established that Damitz had kicked one of the deputies while trying to escape down an embankment.

Thereafter, the State moved on to the last of the charges submitted to the jury, making or having burglary tools, and argued that the evidence demonstrated Damitz had committed the crime of having burglary tools because his backpack clearly contained numerous burglary tools. In addition, several other burglary tools had fallen out of the backpack during his struggle with deputies. The State contended that Damitz intended to use the tools in a burglary because he was found with them while he walked on the side of a road late at night in the vicinity of residences.

The State concluded its closing argument by again referencing its theme,

> Ladies and gentlemen, the Defendant came to Wahkiakum County for one reason[:] to steal. And the State asks that you find him guilty of all counts.

VRP at 503. Damitz did not object.

Damitz then began his closing argument with the theory that the State had not met its burden of proof on each charge. For example, Damitz did not dispute that the Preece burglary occurred, but he argued that the evidence did not prove it was him who committed the burglary. Damitz also contended that he gave law enforcement his brother's name only to avoid being arrested for his outstanding warrants, which he claimed was not a crime. Although Damitz conceded he may have kicked the deputy, he argued he did not intend to kick him, his intent was merely to run away. And, finally, with respect to the burglary tools charge, Damitz contended that at the time he was contacted by law enforcement, he was more than half of a mile from the nearest building—meaning there was nothing for Damitz to break into.

V.  VERDICT, SENTENCING, AND APPEAL

The jury found Damitz guilty of all counts that were submitted to the jury.[2]  At sentencing, the trial court sentenced Damitz to 68 months of confinement.[3]

Damitz appeals.

ANALYSIS

Damitz makes two arguments on appeal, both related to the State's theme that Damitz came to the county for "one reason: to steal." Br. of Appellant at 15. First, Damitz argues that the State committed prosecutorial misconduct by using this allegedly improper theme during its opening

---

[2] Before trial, Damitz pleaded guilty to the possession of another's identification and resisting arrest.

[3] The trial court also imposed the $500 victim penalty assessment (VPA) after finding Damitz indigent. Initially, Damitz argued in this appeal that the VPA should be stricken. However, in October 2023 after this appeal was filed, the trial court struck the VPA from Damitz's judgment and sentence. In his reply brief, Damitz concedes that no action on the VPA is now necessary. Accordingly, we do not further address the VPA.

statement and closing argument. Second, Damitz argues that his counsel was ineffective during trial for failing to object to the State's theme.

We address each argument in turn.

I. PROSECUTORIAL MISCONDUCT

Damitz first argues that the State's theme was an improper thematic catchphrase and the State committed prosecutorial misconduct by using the theme during its opening statement and closing argument. We disagree.

A. LEGAL PRINCIPLES

In a prosecutorial misconduct claim, the defendant bears the burden of showing that the prosecutor's conduct was improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). Generally, we first evaluate whether the prosecutor's conduct was improper. *Id.* at 759. If the prosecutor's conduct was improper, we then determine if the conduct prejudiced the defendant. *Id.* at 760. Prejudice is established by showing a substantial likelihood that the prosecutor's misconduct affected the verdict. *Id.*

However, if the defendant fails to object to the State's remarks at trial, any error regarding prosecutorial misconduct is deemed to have been waived unless the misconduct was "so flagrant and ill[-]intentioned that [a jury] instruction could not have cured the resulting prejudice." *Id.* at 760-61.

B. APPLICATION

Damitz argues that the State committed prosecutorial misconduct by using its improper theme twice in its opening statement and twice in closing argument. He argues that the State's use of the theme was improper not only because it was unsupported by the evidence but also because

it improperly appealed to the hometown instincts of the jury. According to Damitz, the State's hyperbole improperly juxtaposed county residents versus outsiders and was intended to emphasize to jurors that Damitz was not one of them.

Damitz further argues that the misconduct could not have been cured with an instruction from the trial court because the State repeated the theme several times. Damitz contends that the " 'cumulative effect of repetitive prejudicial prosecutorial misconduct may be so flagrant that no instruction or series of instructions can erase their combined prejudicial effect.' " Br. of Appellant at 19 (quoting *State v. Walker*, 164 Wn. App. 724, 737, 265 P.3d 191 (2011), *adhered to on remand*, 173 Wn. App. 1027 (2013)). Relying on our decision in *Walker*, Damitz suggests that because the State repeated the remark multiple times, the impact of any potential curative instruction would have been reduced. Damitz suggests he can show prejudice because the State's evidence of guilt was weak and, so, without the improper theme, Damitz likely would not have been convicted. We disagree.

Damitz failed to object to the State's theme. Therefore, even assuming, without deciding, that the State's remarks were improper, Damitz waived any error unless he is able to show that the prosecutor's misconduct was so flagrant and ill-intentioned that an instruction could not have cured any resulting prejudice. *See Emery*, 174 Wn.2d at 760-61. This standard sets a much higher threshold for reversal than when a defendant makes a timely objection. *State v. Loughbom*, 196 Wn.2d 64, 74, 470 P.3d 499 (2020).

Indeed, when defense counsel fails to object to alleged instances of prosecutorial misconduct, the conduct must be severe before courts will find the alleged misconduct was so flagrant and ill-intentioned that an instruction could not have cured any resulting prejudice. *In re*

*Pers. Restraint of Phelps,* 190 Wn.2d 155, 170-71, 410 P.3d 1142 (2018) (discussing the "level of severity" necessary in its precedent, our Supreme Court said, "We have found prosecutorial misconduct to be flagrant and ill[-]intentioned in *a narrow set of cases* where we were concerned about the jury drawing improper inferences from the evidence, such as those comments alluding to race or a defendant's membership in a particular group, or where the prosecutor otherwise comments on the evidence in an inflammatory manner." (emphasis added)).

As an example of the necessary severity of the State's conduct, in *State v. Walker*, our Supreme Court reversed a defendant's conviction where a prosecutor superimposed "guilty beyond a reasonable doubt" over a defendant's booking photo in bold red letters and labeled over 100 PowerPoint slides with the caption "defendant Walker guilty of premeditated murder." *State v. Walker*, 182 Wn.2d 463, 468, 341 P.3d 976 (2015) (boldface and capitalization omitted) (internal quotation marks omitted).[4] The *Walker* court held that the defendant met his burden of showing that the misconduct that was so prejudicial and flagrant that it denied him of his right to a fair trial. *Id.* at 480-81. The court reasoned that the voluminous number of slides showing statements of the prosecutor's belief as to the defendant's guilt, shown to the jury just before it was excused for deliberations, was "presumptively prejudicial" and might be difficult to overcome even with a curative instruction. *Id.* at 479.

Here, Damitz makes no meaningful attempt to argue that the State's alleged misconduct was flagrant and ill-intentioned. And any such argument would be unpersuasive in the face of the

---

[4] Our Supreme Court's 2015 decision in *State v. Odies Delandus Walker*, 182 Wn.2d 463, has no relation to our 2011 decision, *State v. Aquarius Tyree Walker*, 164 Wn. App. 724, referenced above.

high bar set by our Supreme Court.  Although the State referenced its theme twice in its opening statement and twice in closing argument, the theme was not so inflammatory that it comes close to the level our precedent suggests is necessary to meet the "flagrant and ill[-]intentioned" standard.  The statements, even if improper, have no similarity to those involved in the "narrow set of cases" which involve conduct that threatens the fairness of a defendant's trial.  *See Phelps,* 190 Wn.2d at 170.

And while it is true that repetitive remarks used to develop themes may reduce the impact of a curative instruction, it seems unlikely that if the trial court had decided to sustain an objection to the State's theme, that the State would have repeated its theme again.  And although Damitz relies on our decision in *Walker* to underscore the potential for increased impact with repeated misconduct, that case actually supports a rejection of Damitz's argument here.  164 Wn. App. at 730-36.  In *Walker*, the State made roughly ten improper remarks throughout closing argument *and* in *rebuttal*.  *Id.*  Additionally, the State's improper points in *Walker* were not simply said, many were also included on PowerPoint slides as visual aids for emphasis.  *Id.* at 738.  Here, unlike in *Walker*, the State's remarks were made only twice in closing argument, were not repeated in rebuttal, and were never included on PowerPoint slides.

Damitz has not met his burden of demonstrating that the alleged misconduct was so flagrant and ill-intentioned that an instruction could not have cured any resulting prejudice.  Thus, even if the State's theme constituted misconduct, we hold that Damitz's prosecutorial misconduct claim fails.

11

II. INEFFECTIVE ASSISTANCE OF COUNSEL

Related to his prosecutorial misconduct claim, Damitz next argues that he received ineffective assistance of counsel when his defense counsel failed to object to the State's theme. We disagree.

A. LEGAL PRINCIPLES

To show ineffective assistance of counsel, the defendant must demonstrate that their counsel's performance was deficient and the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Vazquez*, 198 Wn.2d 239, 247-48, 494 P.3d 424 (2021). Failure to establish either prong is fatal to the claim. *Strickland*, 466 U.S. at 700.

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Vazquez*, 198 Wn.2d at 247-48. Generally, to show that trial counsel was deficient, "the defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel." *State v. McFarland*, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995). We strongly presume that counsel's performance was reasonable. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011).

To show prejudice—the second prong of the *Strickland* test—the defendant must demonstrate a reasonable probability that the outcome of the proceeding would have been different if counsel had not performed deficiently. *State v. Johnson*, 12 Wn. App. 2d 201, 210, 460 P.3d 1091 (2020), *aff'd*, 197 Wn.2d 740, 487 P.3d 893 (2021).

B. APPLICATION

Damitz argues his counsel's failure to object to the State's theme was deficient performance because there was no legitimate trial strategy behind failing to object to any theme that portrayed Damitz as a "marauding outsider." Br. of Appellant at 22. And, as with his prosecutorial misconduct claim, Damitz contends that he was prejudiced because the State's evidence of Damitz's guilt was weak.

However, just like his prosecutorial misconduct claim, even assuming that counsel was deficient for failing to object to the State's theme, Damitz cannot show prejudice under the second prong of the *Strickland* test. *See Johnson*, 12 Wn. App. 2d at 210, 213.

Aside from merely asserting that the State's evidence of guilt was weak, Damitz offers no compelling analysis demonstrating his point. In fact, the opposite is true. The strong evidence of Damitz's guilt prevents his ability to establish prejudice.

Regarding the burglary count, video footage showed a person resembling Damitz burglarizing Preece's shed. In addition to the video footage of the burglary, the jury had a still image, Damitz's Facebook photo, and Damitz's driver's license, together with his girlfriend's testimony that the Facebook photograph was a fair and accurate depiction of what Damitz looked like at the time of the burglary. Given all of these similarities, there is no reasonable probability that the results of the trial would have been different even if defense counsel had objected to the State's theme.

As for the other charges, the evidence of Damitz's guilt was also strong. With respect to identity theft, the State introduced direct testimony from law enforcement that Damitz gave his brother's name and date of birth on three occasions when they asked him for his identification.

Similarly, the State offered direct testimony from the deputies about Damitz's assault. Lastly, with regard to the making or having burglary tools charge, law enforcement found Damitz in possession of many "burglary kit" tools during his arrest. Although Damitz may have been some distance from the nearest residence at the time of his arrest, the fact that he was walking on the side of the road with a backpack of burglary tools late at night suggested, as the jury found, that Damitz intended to use the tools in a burglary.

Given the strength of the State's evidence as to these charges, there is no reasonable probability that the outcome of the proceeding would have been different even if Damitz had objected to the State's remarks. Accordingly, Damitz's ineffective assistance of counsel claim fails.[5]

CONCLUSION

We affirm.

---

[5] The risk of prejudice to Damitz from the jury considering arguments unsupported by the evidence and appeals to passion and prejudice were further minimized by the trial court's limiting instruction. The trial court instructed the jury to disregard any remark, statement, or argument that is not supported by the evidence, to act impartially, and to not let emotions overcome rational thought. We presume the jury follows the trial court's instructions. *State v. Clark*, 187 Wn.2d 641, 654, 389 P.3d 462 (2017).

No. 57790-9-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

VELJACIC, A.C.J.

GLASGOW, J.