IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39236-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRYAN PAUL AHO, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

COONEY, J. — Bryan Paul Aho was charged with attempting to elude a police

vehicle, driving without an ignition interlock device, and driving while license suspended

in the third degree. After pleading guilty to the two misdemeanors, Mr. Aho proceeded

to trial on the charge of attempting to elude a police vehicle. The jury returned a verdict

of guilty. Mr. Aho appeals alleging a due process violation and prosecutorial

misconduct.

We affirm.

BACKGROUND

On January 31, 2022, Mr. Aho was a driving a vehicle he had recently purchased.

He pulled out in front of Mitchel Kroner, a deputy with the Benton County Sheriff's

Office, garnering the deputy's attention. Deputy Kroner ran a check on the vehicle's

license plate to ascertain who owned the vehicle and to verify the vehicle's registration

was valid. A return on the license plate revealed that the registered owner's driving privileges were suspended. Deputy Kroner began to notify dispatch that he was going to conduct a traffic stop when Mr. Aho immediately turned into a McDonald's parking lot. Deputy Kroner turned on his emergency lights with the intent of stopping Mr. Aho. In response, Mr. Aho drove through the McDonald's parking lot and onto Skagit, a gravel road, where he accelerated to a high rate of speed. As the deputy pursued, Mr. Aho approached the intersection of Skagit and Kellogg where he failed to stop at a posted stop sign and attempted to turn right while accelerating. Mr. Aho failed to negotiate the turn, collided with another vehicle in the intersection, and came to a stop.

The State charged Mr. Aho with attempting to elude a police vehicle, driving without an ignition interlock device, and driving while license suspended in the third degree. Mr. Aho pleaded guilty to the charges of driving without an ignition interlock device and driving while license suspended, and proceeded to trial on the charge of attempting to elude a police vehicle.

At trial, Mr. Aho testified that he was not attempting to evade Deputy Kroner when he turned into the McDonald's parking lot. Rather, he turned into the McDonalds parking lot because he was hungry. Mr. Aho testified he suddenly left the McDonalds parking lot without ordering food after his girlfriend reminded him it was garbage day. He explained to the jury that he veered off onto the gravel road because he had just gotten the car and wanted to "play around a little" and that he was unaware the deputy was

2

behind him.  Rep. of Proc. (RP) at 176.  Mr. Aho testified that he "floored the pedal"

after leaving the McDonalds' parking lot because "it was a new car" and he was "playin

[sic] around."  RP at 176.  Mr. Aho claimed he went through the stop sign because he

saw no other vehicles around.  Finally, Mr. Aho testified that when he saw the police

officer behind him, he attempted to hit the brake but he "missed the pedal or slipped off

the pedal" and "hit the gas at the stop sign."  RP at 177.

At the close of evidence, neither the State nor Mr. Aho objected to the jury

instructions.  The court read the instructions to the jury.  Following summation, the jury

was provided a written copy of the instructions.  Relevant to this appeal, the court read

"INSTRUCTION NO. 6" to the jury.  Clerk's Papers (CP) at 67.  The instruction stated:

> To convict the defendant of the crime of Attempting to Elude a
> Police Vehicle, each of the following elements of the crime must be proved
> beyond a reasonable doubt:
>
> (1) That on or about January 31, 2022, the defendant drove a motor
> vehicle;
>
> (2) That the defendant was signaled to stop by a uniformed police
> officer by hand, voice, emergency light, or siren;
>
> (3) That the signaling police officer's vehicle was equipped with
> lights and siren;
>
> (4) That the defendant willfully failed or refused to immediately
> bring the vehicle to a stop after being signaled to stop;
>
> (5) That while attempting to elude a pursuing police vehicle, the
> defendant drove his vehicle in a reckless manner; and
>
> (6) That the acts occurred in the State of Washington.

> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
>
> On the other hand, if after weighing all the evidence you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

CP at 67.

During closing argument, the State applied the evidence to each of the six elements of attempting to elude a police vehicle. When it came to the "drove his vehicle in a reckless manner" element, the prosecutor argued:

> Accelerating away from a patrol car and blowing through a stop sign and crashing into another vehicle I submit to you is certainly rash or heedless, and it's certainly reckless manner. Vehicles that are not being driven in a reckless manner don't strike oncoming cars.

RP at 208. Following deliberations, the jury found Mr. Aho guilty of the crime of attempting to elude a police vehicle. Mr. Aho timely appeals.

ANALYSIS

DUE PROCESS

For the first time on appeal, Mr. Aho argues that jury instruction 6 violated his right to due process under the Fourteenth Amendment to the United States Constitution. Specifically, Mr. Aho claims the difference between "if you find from the evidence" and "if after weighing all the evidence" creates a less onerous standard for conviction than it

does for acquittal. *See* Appellant's Opening Br. at 6-7. The State responds that under

RAP 2.5(a) we should decline to review the unpreserved error.

Under RAP 2.5(a) we may refuse to review any claim of error that was not raised

at the trial court. This rule is intended to encourage the efficient use of judicial resources.

*State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988). However, claimed errors of a

lack of jurisdiction, a failure to establish facts on which relief can be granted, or a

manifest error affecting a constitutional right may be raised for the first time on appeal.

RAP 2.5(a).

Mr. Aho fails to articulate under which exception his claimed error falls. Because

Mr. Aho alleges a due process violation under the Fourteenth Amendment, we presume

he is claiming a manifest error affecting a constitutional right. "In analyzing an asserted

constitutional interest, we do not assume the alleged error is of constitutional magnitude."

*State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). Rather, "[w]e look to the

asserted claim and assess whether, if correct, it implicates a constitutional interest as

compared to another form of trial error." *Id.*

Once an error has been deemed to be of a constitutional magnitude, the appellate

court must determine whether the error is manifest. *Id.* at 99. An error is manifest if

there is a "'plausible showing by the [appellant] that the asserted error had practical and

identifiable consequences in the trial of the case.'" *Id.* (alteration in original) (quoting

*State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007)). The burden is on the

defendant seeking the appeal to identify a constitutional error, and show that the alleged error actually affected their rights at trial. *Kirkman*, 159 Wn.2d at 926-27. Once an error is established as a manifest constitutional error, the appellate court must next engage in a harmless error analysis. *O'Hara*, 167 Wn.2d at 99. "In order to ensure the actual prejudice and harmless error analyses are separate, the focus of the actual prejudice must be on whether the error is so obvious on the record that the error warrants appellate review." *Id*. at 99-100.

Mr. Aho argues a violation of his constitutional right to due process under the Fourteenth Amendment. Accordingly, we look to his claim to determine, if correct, whether his right to due process was violated. Mr. Aho argues that the language in instruction 6 of "[i]f you find from the evidence" created a less onerous standard than the to acquit language of "if after weighing all the evidence." CP at 67. If Mr. Aho's allegations are correct, then the alleged error would be of constitutional magnitude. The jury may have interpreted the instruction as imposing a less stringent review of the evidence in order to convict.

Because Mr. Aho's claimed error is of constitutional magnitude, he must next show that the constitutional error was manifest (i.e., he was actually prejudiced by the alleged error). Instead of asserting actual prejudice, Mr. Aho speculates that, but for the claimed error, the jury's verdict may have been different. Mr. Aho asserts "[t]he court's error *suggested* that jurors could convict based on a less rigorous review of the evidence

than required for acquittal."  Appellant's Opening Br. at 8 (emphasis added).  The mere possibility that the trial court suggested a less onerous standard to convict does not establish how the claimed error actually affected Mr. Aho's rights at trial.  The claimed constitutional error is not manifest.  Accordingly, we decline review.

PROSECUTORIAL MISCONDUCT

Mr. Aho next contends the State engaged in prosecutorial misconduct during closing argument.  Mr. Aho alleges that the prosecutor's argument that "[v]ehicles that are not being driven in a reckless manner don't strike oncoming cars," RP at 208, created a mandatory presumption in the mind of the jurors.  Such a presumption, according to Mr. Aho, shifted the burden of proof to him and relieved the State of its obligation to prove the element of recklessness beyond a reasonable doubt.  The State responds that Mr. Aho failed to object to the prosecutor's argument, and thus, error, if any, was waived.  We agree.

Prosecutorial misconduct is grounds for reversal if "'the prosecuting attorney's conduct was improper and prejudicial.'"  *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (quoting *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009)).  The defendant bears the burden of proving that the prosecutor's conduct was both improper and prejudicial.  *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012).  A prosecutor's argument must be confined to the law stated in the trial court's instructions.  *State v. Walker*, 164 Wn. App. 724, 736, 265 P.3d 191 (2011).  When the prosecutor

7

mischaracterizes the law and there is a substantial likelihood that the misstatement affected the jury verdict, the prosecutor's actions are considered improper. *Id*.

If a defendant fails to object at trial to the prosecutor's misconduct, then the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice. *Emery*, 174 Wn.2d at 760-61. "Under this heightened standard, the defendant must show that (1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Id*. at 761 (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

As explained below, the prosecutor's argument was proper, and Mr. Aho fails to meet the heightened "flagrant and ill intentioned standard." When examining a prosecutor's alleged misconduct, the improper conduct is not viewed in isolation. *Monday*, 171 Wn.2d at 675. Instead, the conduct is looked at "in the full trial context, including the evidence presented, 'the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.'" *Id*. (quoting *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)).

Here, the prosecutor began its closing argument by reminding the jury that it carried the burden of proving all six elements of the crime. The prosecutor then reviewed the evidence with the jury, tying it to the elements of the crime. When it came to the

reckless manner element, the prosecutor argued, "Accelerating away from a patrol car and blowing through a stop sign and crashing into another vehicle I submit to you is certainly rash or heedless, and it's certainly reckless manner." RP at 208. The prosecutor then stated, "Vehicles that are not being driven in a reckless manner don't strike oncoming cars." RP at 208. Although the prosecutor's argument may appear to promote a mandatory presumption, it was diluted by the preceding statement. Viewed in context, the prosecutor's argument focused on the evidence, argued that the evidence proved that Mr. Aho was driving in a reckless manner, and did not argue that the jury should presume anything other than what the evidence showed. We conclude that the prosecutor's argument was proper.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Lawrence-Berrey, J.

9